UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>JEFFREY PIERCE,<br><br>        Defendant. | Crim. No. 18-30024-MGM<br><br>VIOLATION:<br><br>Title 18, United States Code, Section 371 – Conspiracy (Count 1)<br><br>Title 18, United States Code, Section 982 – Forfeiture Allegations |

### INFORMATION

The United States Attorney charges that:

<u>COUNT ONE</u>:  18 U.S.C. § 371 – Conspiracy

At all times relevant to this Information:

1. Greylock Federal Credit Union ("GFCU") was a federal credit union headquartered in Pittsfield, with more than a dozen branch offices in and around Berkshire County, Massachusetts. GFCU's accounts were insured by the National Credit Union Administration Board.

2. JEFFREY PIERCE ("Pierce"), defendant herein, was a Pittsfield area businessman who owned and operated the following construction and real estate development companies, each of which had loan accounts at GFCU:

    a.    G & P Builders, Inc. ("GPB");

    b.    Oakbrook, Inc. ("Oakbrook");

    c.    Modular Home Connection, Inc. ("MHC");

1

   d.  Gale Development, LLC ("Gale"); and

   e.  G & P Excavation, Inc. ("GPE").

3.  Michael Dicenzo ("Dicenzo") was employed as a vice president of business banking at GFCU and in this capacity supervised Pierce's loan accounts.

4.  According to GFCU loan approval policy, Dicenzo could only authorize loans of up to $300,000 without any other approvals, and needed the approval of his supervisor, the senior vice president of business banking, to authorize loans of up to $700,000. On March 18, 2009, GFCU implemented changes to these lending authority levels, requiring Dicenzo to obtain the approval of his supervisor for any commercial loan.

5.  In addition, GFCU's loan aggregation policy provided that such approval limits were based on existing aggregate member business loan commitments, so that any two or more loans to a credit union member (such as Pierce and his companies) had to be added together. Further, modifications to a loan that changed the loan amounts were subject to the approval limits.

6.  Lastly, GFCU's loan documentation policy required applicants to provide detailed financial information, such as balance sheets, profit and loss statements, and tax returns.

7.  Between March 1, 2005 and September 5, 2008, Dicenzo authorized various loans and loan modifications to Pierce and his companies in knowing and intentional violation of GFCU's loan approval, loan aggregation, loan modification, and loan documentation policies. By circumventing GFCU's policies, Dicenzo caused GFCU to provide Pierce and his companies with funds far in excess of what Pierce and his companies could reasonably receive or repay.

8. On the following dates, Dicenzo authorized the following loans to Pierce or his entities:

| Date | Loan No. | Recipient | Loan | Amount | Modification |
|---|---|---|---|---|---|
| 03-21-05 | 1032 | Pierce | 5-year Adjustable Rate Mortgage | $154,200 | -- |
| 11-29-05 | 1070 | Pierce | Home Improvement | $9,152 | -- |
| 03-23-06 | 1640 | GPB | Single Advanced Adjustable Rate | $48,000 | $220,000 |
| 06-30-06 | 1601 | GPB | Term Fixed | $33,650 | -- |
| 08-14-06 | 1600 | Oakbrook | Passenger Auto | $47,666 | -- |
| 09-07-06 | 1661 | Oakbrook | Adjustable Rate Mortgage | $158,400 | -- |
| 09-19-08 | | | | | $116,600 |
| 11-25-08 | | | | | $ 85,000 |
| 10-04-06 | 131621 | Oakbrook | Letter of Credit | $200,000 | $0 |
| 04-30-07 | | | | | $ 50,000 |
| 07-17-07 | | | | | $ 50,000 |
| 11-13-07 | | | | | $100,000 |
| 05-29-08 | | | | | $ 75,000 |
| 10-31-06 | 471621 | GPB | Letter of Credit | $200,000 | -- |
| 02-20-07 | 4687 | MHC | Adjustable Rate Mortgage | $110,000 | -- |
| 12-10-07 | | | | | $100,000 |
| 01-07-08 | | | | | $ 90,000 |
| 02-20-07 | 2385 | Oakbrook | Adjustable Rate Mortgage | $240,000 | -- |

3

| Date | Loan No. | Recipient | Loan | Amount | Modification |
|---|---|---|---|---|---|
| 02-23-07 | 6676 | MHC | Letter of Credit | $175,000 | -- |
| 07-17-07 | | | | | $75,000 |
| 09-12-07 | | | | | $50,000 |
| 01-04-09 | | | | | $75,000 |
| 04-09-07 | 0387 | Gale | Fixed Rate Mortgage | $130,000 | -- |
| 09-20-07 | | | | | $278,000 |
| 03-21-08 | | | | | $ 92,000 |
| 04-11-07 | 2536 | GPE | Letter of Credit | $100,000 | -- |
| 07-17-07 | | | | | $100,000 |
| 09-17-07 | | | | | $ 75,000 |
| 06-27-08 | | | | | $ 50,000 |
| 05-07-07 | 9945 | GPE | Term Fixed | $232,500 | -- |
| 04-29-08 | | | | | $92,500 |
| 06-01-09 | | | | | $50,000 |
| 05-30-07 | 1427 | Oakbrook | Single Advanced Fixed | $75,000 | -- |
| 03-14-08 | | | | | $50,000 |
| 01-27-09 | | | | | $50,000 |
| 03-16-09 | | | | | $62,000 |
| 05-30-07 | 3230 | Gale | Letter of Credit | $300,000 | -- |
| 04-08-09 | | | | | $50,000 |

4

| Date | Loan No. | Recipient | Loan | Amount | Modification |
|---|---|---|---|---|---|
| 09-07-07 | 7697 | MHC | Term Fixed | $31,800 | -- |
| 11-05-07 | 7036 | GPE | Passenger Auto | $44,300 | -- |
| 03-27-08 | 1523 | MHC | Used Auto | $30,900 | -- |
| 09-05-08 | 7862 | Pierce | Recreational | $17,422 | -- |

9. In exchange for receiving these loans, Pierce agreed to provide, and did provide, Dicenzo various money, profit, property, and benefits, including check payments from Pierce's companies that derived from GFCU loan funds, the free use of a home constructed by one of Pierce's companies with a GFCU loan, and the free use of a BMW automobile purchased by one of Pierce's companies with a GFCU loan.

10. On or about October 6, 2006, Dicenzo opened a GFCU checking account in the name of CAD Home Design ("CAD").

11. From October 10, 2006 through approximately March 20, 2009, Dicenzo deposited approximately $134,773 into the CAD account in checks from various businesses operated by Pierce.

12. On or about May 30, 2007, at Dicenzo's request, Pierce wrote two $7,500 checks to CAD:

    a. Check No. 1006 from GPE's business checking account numbered x-745 at GFCU. Dicenzo deposited this check into the CAD account on or about May 31, 2007. This payment related to GPE's Loan No. 9945 in the amount of $232,500,

which GFCU issued on May 7, 2007.

  b. Check No. 295 from Oakbrook's business checking account numbered x-131 at GFCU. Dicenzo deposited this check into the CAD account on or about June 1, 2007. This payment related to Oakbrook's Loan No. 1427 in the amount of $75,000, which GFCU issued on May 30, 2007.

13. On or about September 17, 2007, at Dicenzo's request, Pierce wrote two $15,000 checks to CAD:

  a. Check No. 1014 from GPE's business checking account numbered x-745 at GFCU. Dicenzo deposited this check into the CAD account on or about September 19, 2007. This payment related to the modification of GPE's Letter of Credit No. 2356 in the amount of $75,000, which GFCU issued on September 17, 2007.

  b. Check No. 1033 from MHC's business checking account numbered x-745 at GFCU. Dicenzo deposited this check into the CAD account on or about September 19, 2007. This payment related to the modification of MHC's Letter of Credit No. 6676 in the amount of $50,000, which GFCU issued on September 12, 2007.

14. In or about March 2010, Pierce met with an officer of GFCU and a representative of GFCU's forensic accounting firm to discuss the loans authorized by Dicenzo and still owed by Pierce and his companies. During that meeting, at the direction of Dicenzo and for the purpose of influencing the action of GFCU upon the loans, Pierce falsely stated that the monies paid by his companies to CAD were payments for design work that Dicenzo's wife had provided on Pierce's

6

construction projects.

15. Between on or about March 21, 2005 and on or about March 30, 2010, in the District of Massachusetts and elsewhere,

**JEFFREY PIERCE,**

defendant herein, did knowingly and willfully combine, conspire, confederate, and agree with Dicenzo to commit the following offenses against the United States:

    a. Receipt of Money Through Transactions Of A Federal Credit Union With Intent To Defraud, in violation of Title 18, United States Code, Section 1006; and

    b. False Statements To A Federal Credit Union, in violation of Title 18, United States Code, Section 1014.

16. The objects of the conspiracy were to:

    a. defraud GFCU by obtaining various loans and loan modifications for Pierce and his companies in violation of GFCU's loan approval, loan aggregation, loan modification, and loan documentation policies, and by providing Dicenzo with various money, profit, property, and benefits, including check payments to CAD from Pierce's companies that derived from GFCU's loan funds; and

    b. influence GFCU's action upon its loans to Pierce and his companies by falsely stating to a GFCU officer and a representative of its forensic accounting firm that the check payments from Pierce's companies to CAD were payments for design work that Dicenzo's wife had provided on Pierce's construction projects.

17. In furtherance of the conspiracy and to effect the objects thereof, at least one of the

following overt acts, among others, was committed by at least one of the conspirators in the District of Massachusetts and elsewhere:

    a.    On or about May 7, 2007, Dicenzo caused GFCU to issue GPE's Loan No. 9945 in the amount of $232,500.

    b.    On or about May 30, 2007, Pierce wrote Check No. 1006 in the amount of $7,500 to CAD from GPE's business checking account numbered x-745 at GFCU.

    c.    On or about May 31, 2007, Dicenzo deposited GPE Check No. 1006 into the CAD account.

    d.    In or about March 2010, at Dicenzo's direction, Pierce falsely stated to an officer of GFCU and a representative of GFCU's forensic accountant that the monies paid by his companies to CAD were payments for design work that Dicenzo's wife had provided on Pierce's construction projects.

## **FORFEITURE ALLEGATIONS**

### (18 U.S.C. § 982(a)(2))

The United States Attorney further charges that:

1. Upon conviction of the offense alleged in Count One of this Information,

### **JEFFREY PIERCE,**

defendant herein, shall forfeit to the United States of America pursuant to 18 U.S.C. § 982(a)(2)(A), all property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation.

2. If any of the property described in Paragraph 1 above as a result of any act or omission of the defendant –

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred to, sold to, or deposited with a third party;

    c. has been placed beyond the jurisdiction of this Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to 18 U.S.C. § 982(b)(1), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 1 above.

All pursuant to Title 18, United States Code, Section 982(a)(2).

ANDREW E. LELLING
United States Attorney

By: /s/ Steven H. Breslow
STEVEN H. BRESLOW
Assistant U.S. Attorney