IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

JEFFREY PIERCE

    PETITIONER

v.

UNITED STATES OF AMERICA

    RESPONDENT           CASE 3:18-cr-30024

EMERGENCY MOTION FOR MODIFICATION OF SENTENCE

PURSUANT TO AMENDED 18 U.S.C.§3582 (c)(1)(A)

IN LIGHT OF THE IMMINENT THREAT OF THE SPREAD OF THE COVID-19 VIRUS

INTRODUCTION

    Now comes Jeffrey Pierce the "Petitioner" in the above captioned matter, respectfully asking that his sentence be modified pursuant to 18 U.S.C. §3582(c)(1)(A)(i) in light of the COVID-19 pandemic. Mr. Pierce is presently incarcerated at the prison camp at Fort Devens, MA.

    Mr. Pierce, is a 52 year old man, who suffers from diabetes, sleep apnia Atrial Fibrilation, High boold pressure, high cholesterol and he brings this motion as medical experts are concerned that those with underlying health conditions such as, Mr. Pierce's are more likely to contract the virus and die.

    The living environment could reasonably be described as a "petri dish" <u>Barr Memo Supra</u>, inmates are required to share cubicles with two bunks, top and bottom bunks, they also share a

Page 1

comunal shower and toilet(s). Essentially, the living arrangements are more of a dormitory arrangements which is conducive to the spread of the virus, he claims that it is impractical for him to practice social distancing in his present environment. Moreover, his underlying medical conditions have been identified by the CDC as health conditions which makes him vulnerable to contracting the deadly disease, and because of this same health factor, if he contracts the disease it could be fatal.

Although Mr. Pierce practices comprehensive personal hygiene, he states that other inmates may not and as a result there is an increased risk of him being exposed to contracting the virus.

He, respectfully ask, that this Honorable court finds, that the COVID-19 poses a deadly risk to Mr. Pierce because of his underlying health issues which amounts to "an extraordinary and compelling" circumstances that warrants transferring him to serve the remainder of his sentence with special conditions to Home Confinement for the duration of his sentence.

Mr. Pierce has maintained an unblemished disciplinary record while incarcerated, and he has been classified by the BOP as having a PATTERN risk score of minimum which is an indication of his liklelihood of recividism, if any.

As of April 13, 2020, 53 BOP institutions reported having infections amongst its staff and inmates, this is very alarming, when as of two weeks ago there were only two BOP institutions

reporting infections. As of the end of business on April 13, there were 446 federal inmates infected and 248 staff, resulting in 9 deaths.

FACTUAL BACKGROUND

On August 9, 2019, Mr. Pierce was sentenced to 20 months.

On April 22, 2020, Mr. Pierce filed a request with the Warden of the institution where he is imprisoned and as of the date of filing of this motion, the Warden has not responded. See Exhibit 1

Although, §3582(c)(1)(A), requires Mr. Pierce to wait for 30 days to have lapsed before filing with the court or to exhaust all administrative remedies, he cannot do so, because it will be futile to do so and he will be unable to get the relief he requested. See <u>Melendez v. Steve Mora,</u> LEXIS 149397 (D.PR. 2014)" A prisoner's failure to exhaust available <u>administrative remedies</u> may be excused when pursuing such remedies will be <u>futile</u> or unable to afford the petitioner relief sought. The Corona Virus, is spreading rapidly and exhausting administrative remedy could possibly result in the death of Mr. Pierce. See <u>Basank v. Decker</u>, 2020 WL 1487274 (S.D.N.Y. MAR 2020) *5 (The spread of COVID-19 "is measured in a mattter of a single day-not weeks, months or years"). See also <u>Portela-Gonzalez v. Secretary of the Navy,</u>109 F. 3d 74, 77(1st. Cir 1997) quoting <u>McCarthy v. Madigan,</u> 503 U.S. 140, 146 112 S. Ct. 1081 (1992) "If the situation is such that "a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim, exhaustion

may be excused even though the administrative decision making schedule is otherwise reasonable and definite." If Mr. Pierce awaits the completion of administrative remedy, which could take almost five months, he could suffer catastrophic consequences.

## REDUCTION OF SENTENCE STANDARDS

Under U.S. Code Title 18, Section 3582(c), a court may not, modify a term of imprisonment once it has been imposed except in limited circumstances, including where the court finds that **"extraordinary and compelling"** reasons warrants such a reduction.....and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Before the court can make this determination, however, the motion must be made by the director of the Bureau of Prisons, or by the defendant after he "has fully exhausted all administrative rights to appeal" the BOP's failure to do so, or the lapse of 30 days from the receipt of such a request by the Warden of the defendant's facility, whichever is earlier. Congress did not define what constitutes **"extraordinary and compelling" reasons**, The Sentencing Commission did so in Section 1B1.13 of the United States Sentencing Guidelines, establishing three potential categories: the defendant's medical condition; the defendant's age and the defendant's family circumstnces.

In the context of COVID-19, the defendant's medical condition is the basis most frequently invoked to satisfy the **"extraordinary and compelling reasons"**, basis . Under the guidleine, compassionate release is warranted where "[t]he

defendant is.....suffering from serious physical medical condition... that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is expected not to recover". In addition to making this finding, a court considering a request for compassionate release must also find that the defendant is not a danger to the safety of any other person or the community. Finally, the court must apply the factors contained in U.S. Code Title 18, Section 3553(a) which guide sentencing generally.

If a prisoner exhausts administrative remedies, the court may, upon a motion of the prisoner reduce his sentence, after considering the factors set forth in 18 U.S.C. §3553(a) to the extent they are applicable, if the court finds that:

(i) <u>extraordinary and compelling</u> reasons warrant such a reduction. Mr. Pierce respectfully ask, that this Honorable court finds that he is suffering from a "serious medical condition that substantially diminishes the ability to provide self-care within the environment at the Fort Devens Camp from which he is not expected to recover, which is Atrial Fibrilation, diabetes, sleep apnia, High Blood Pressure, High Cholesterol and when combined with COVID-19, would imperil his survival which is <u>extraordinary and compelling</u> and he is making his request for home confinement as an <u>"exceptional reason"</u> because the circumstances are exceptional.

EXTRAORDINARY AND COMPELLING REASONS:

Patrick Jones, a prisoner at Federal Correctional

Institution in Oakdale, Louisiana applied for compassionate release based on the COVID-19 imminent risk, **the government opposed** his motion and the Distric Court denied him relief. On March 28, 2020 Mr. Jones became the first Federal inmate to die.

On Monday April 6, 2020 AG Barr advised in a memorandum to the country's 94 U.S. Attorneys that they should consider "the medical risks associated with individuals being remanded into federal custody during the COVID-19 pandemic", likewise the government should consider the risk Mr. Pierce faces if he should contract the virus.

The government's intention at Mr. Pierce's sentencing was to sentence him to a definitive term not to have him serve a death sentence, and the COVID-19 virus has the ability to create that scenario if Mr. Pierce remains in this vulnerable environment

In the Commonwealth of Massachusetts, as of the filing of this motion, more than 26,867 individuals have tested positive for the virus, resulting in at least 844 deaths. The majority of Bay State residents infected live in Middlesex, Suffolk, Essex, Norfolk, Worcester and Plymouth counties. FCP Devens is located in the heart of one of those counties.

Mr. Pierce is 52 years old and with underlying medical conditions.

According to the CDC, people at high-risk for severe illness from COVID-19 include people 65 years and older; people with chronic lung disease, moderate asthma, [COPD], and emphysemia; People with serious heart conditions; People with immunocompromised

conditions, including cancer treatment, bone marrow or organ transplantation, immune deficiencies; poorly controlled HIV or AIDS, and prolonged use of corticosteriods and other immune weakening medications; People who are severely obese(body mass index [BMI] of 40 higher); People with diabetes; People with chronic kidney disease and who are undergoing dialysis; People with liver diseases neurologic disorder neurodevelopmental, or intellectual disability; pregnancy; current smoking status; former smoking status, or other chronic disease. The CDC's report for April 3 also reported a strong correlation between **hypertension** and COVID-19 hospitalization.

Cases granting relief have typically premised their rulings on the heightened risks certain defendants face. To be clear it is not necessary that this court finds that Mr. Pierce is actually suffering from COVID-19 in order to grant him relief, nor is it essential that the virus even be present at the Devens Camp., What matters, Mr. Pierce, suggests is that he is suffering from a serious medical condition that substantially diminishes the ability to provide self-care within the Devens environment and from which he is not expected to recover. See **United States v. McCarthy**, (No. 2:1!'-CR-0230) (D.Conn. Apr. 8 2020).

As one public health expert has explained:"if you wanted to set up a situation that would promote rapid transmission of a respiratory virus, you would say prison: the living arrangements here at Devens, is designed in such a way that there are two inmates to each cube, they share a very small space, the prison's

layout is not designed for social distancing, they also share a communal shower and toilet(s), which are not always maintained in a sanitary manner by the inmate popluation.

Although the Warden is making a comprehensive effort(s) to avoid the spread of the COVID-19 virus, he is relying on approximately 108 inmates to practice the basic hygiene recommended by the CDC, and simply, the inmates are not necessarily complying with his directives, which puts Mr. Pierce at risk of contracting the virus, which could be fatal to him.

While the Bureau of Prisons at times, and even Federal Prosecutors have argued ;that prisoners "might be safer" within the prison confines, such an argument now has been shown to defy any logical reasoning. Mr. Pierce would be safer at home, shared with only his immediate family, rather than in a confined prison environment with over 108 persons residing and sharing a cube with double bunks. In short, measures taken by the BOP, cannot help but be insufficient. The risk factors of now being in a small CAMP environment, creates a serious risk and threat to other inmates as well as other BOP staff members, if the COVID-19 virus comes into the facility, which would then create the "petri-dish" death threatening environment that even U.S. Attorney Barr has recognized.

The CDC, The White House Corona Virus Task Force and the Commonwealth of Massachussets have recommended social distancing: which is impractical in the Devens prison environment at FPC Devens.

Other experts describe the possibility of "accelerated transmission and poor health outcomes of patients with COVID-19 in prisons and jails as "extraorindary high" due not only to the close quarters in which the inmates reside but also the quality and quantity of available medical care; which is inadequate because of the nature of the virus.

The fact that hundreds of individuals from staff to arrestees, enter and leave detention facilities daily, makes these dangers not theoretical but actual. During the COVID-19 outbreak in China, prisons became hotbeds of infection despite stringent control measures and press reports indicating that the same is now happening at Federal Prisons throughout the country and therefore, Fort Devens is not immune to the disease.

On Monday April 13, 2020 USA TODAY reported that a travelling sales person in Maine helped spread the Corona-Virus early in the outbreak last month, the leader of the Maine Center for disease Control, Dr. Nirav Shah said "the salesperson was a so-called spreader, a single person responsible for a significant number of exposures to the virus", this will be the same if one of the correctional officers should bring the virus to the Prison-CAMP, multiple inmates could be infected and the CAMP will essentially become a morgue, as described by Victor Balckwell of CNN and a prison advocate.

On April 3, 2020, the United States Attorney General William Barr, directed the Bureau of Prisons to start releasing at risk inmates, based on certain Criteria See Exhibit 2, as follows:

.The security level of the facility currently holding the inmate, with priority given to inmates residing in low and medium security facilities;

.The inmate's conduct in prison, with inmates who engaged in violent or gang related activity in prison or who have incurred a BOP violation within the last year not receiving priority treatment under this Memorandum;

.The inmate's score under **PATTERN**, with inmates who anything above a minimum score not receiving priority treatment under this Memorandum;

.Whether the inmate has demonstrated and verifiable re-entry plan that will prevent recividism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting than the inmate would face in his or her BOP facility;

.The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community. Some offense, such as sex offenses should weight more heavily against consideration for home detention.

Mr. Pierce has a PATTERN risk score of minimum, he has served 30% of his sentence and he has underlying medical conditions, however, he was not selected by the BOP for Home Confinement, at this time

Other courts have been releasing Federal prisoners because of the imminent risk of contracting the virus. See **United States**

**v. Zuckerman** (S.J.) N.Y. April 3, 2020) (modifying defendants sentence to replace his outstanding term of imprisonment with an equal period of home confinement), See **United States v. Campagna**, 2020 Wl 1489828 (S.D.N.Y. Mar. 27 2020) (modifying defendant's sentence to replace his outstanding term of imprisonment with and equal period of home incarceration), **United States v. Foster** No. 1:14-cr-324-02 (MD Pa. Apr. 3, 2020) ("The circumstances faced by our prison system during this highly contagious, potentially fatal global pandemic are unprecedented. It is no stretch to call this environment "extraordinary and compelling", and we well believe that, should we not reduce Defendant's sentence, Defendant has a high likelihood of contracting COVID-19 from which he would "not be expected to recover" USSG§ 1B1.13. No rationale is more compelling and extraordinary) also see **United States v. Rodney Russel**, 1:12-cr-16-JAW-2 (D. ME Mar. 2020), Mr. Russel complained that the conditions at Fort Devens Prison Camp as "exceptional Circumstances" based on the living arrangements and the inadequate health care as a result of the nature of the COVID-19 virus. The district court agreed and released him on bond pending appeal.

3553(a)FACTORS

Mr. Pierce's conduct in prison has been exceptional. He has been attending numerous courses to reduce his lieklihood of recvidism as determined by his PATTERN risk score.

Mr. Pierce is employed at maintenance and the snow plow

crew, where he is responsible for maintenance and construction projects. He has done so diligently without incident.

DANGEROUSNESS

Mr. Pierce does not pose a danger to any other person in the community, every day he is required to leave the prison CAMP at 42 Patton Road Ayer MA, and work at several onsite and offsite facilities. Indeed, he does so without any supervision and he has been doing so for over 6 months. He is also at a prison CAMP, located in the community in Ayer MA. Being at a prison CAMP is a privilege which is earned.

RELEASE PLANS

Mr. Pierce intends to live with his family at 18 Winesap Road, Pittsfield, MA 01201. He has many other family support in the neighborhood.

WHEREFORE, Mr. Pierce respectfully ask that the District court grants his motion and transfers him to Home Confinement, where he will serve the remainder of his sentence, with conditions acceptable to the court. He further ask for compassion, he has served a little over six months during that time he has reflected on his past, he now ask for compassion so that he can be with his family during the invasion of this catastrophic virus, which has changed the way we live in the United States. His family needs him. Upon granting of this motion his family will pick him up to bring him to his house in MA, where he will self quarantine for 14 days.

Respectfully Submitted,

*[signature: Jeffrey Pierce]*

Jeffrey Pierce

Federal Medical Center, Devens MA

PO Box 879

Ayer MA, 01432

April 23, 2020

## CERTIFICATE OF SERVICE

I Jeffrey Pierce, certify that on April 23, 2020 I mailed a copy of this motion to the clerk of courts for filing by First Class Mail, United States Postal Service and the government will be notified electronically.

Respectfully Submitted

*[signature: Jeffrey Pierce]*

Jeffrey Pierce

April 23, 2020